1  Joel E. Elkins (SBN 256020)
   jelkins@weisslawllp.com
2  **WEISSLAW LLP**
   9100 Wilshire Blvd. #725 E.
3  Beverly Hills, CA 90210
   Telephone: 310/208-2800
4  Facsimile:  310/209-2348

5  *Attorneys for Plaintiff*

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  STEPHEN BUSHANSKY,                    ) Case No.
                                          )
12              Plaintiff,                )
                                          )
13                                        ) **COMPLAINT FOR**
        vs.                               ) **VIOLATIONS OF THE**
14                                        ) **FEDERAL SECURITIES**
                                          ) **LAWS**
15  REXNORD CORPORATION, TODD             )
    A. ADAMS, THEODORE D.                 ) JURY TRIAL DEMANDED
16  CRANDALL, ROSEMARY M.                 )
    SCHOOLER, ROBIN A. WALKER-            )
17  LEE, MARK S. BARTLETT,                )
    JACQUES DONAVON BUTLER,               )
18  DAVID C. LONGREN, GEORGE C.           )
    MOORE, THOMAS D.                      )
19  CHRISTOPOUL, JOHN S. STROUP,          )
    and PEGGY N. TROY,                    )
20                                        )
21              Defendants.               )
                                          )
22  _____      )

23

24      Plaintiff Stephen Bushansky ("Plaintiff"), on behalf of himself and all others

25  similarly situated, upon information and belief, including an examination and inquiry

26  conducted by and through his counsel, except as to those allegations pertaining to

27

28
                                    - 1 -
    COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

### NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against Rexnord Corporation ("Rexnord" or the "Company") and the members of Rexnord's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Rexnord's Process & Motion Control ("PMC") segment will be acquired by Regal Beloit Corporation ("Regal") through Rexnord's subsidiary Land Newco, Inc. ("Land"), and Regal's subsidiary Phoenix 2021, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On February 16, 2021, Rexnord and Regal issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated February 15, 2021 (the "Merger Agreement") to sell Rexnord's PMC segment to Regal.   Under the terms of the Merger Agreement: (i) Rexnord will transfer to Land, substantially all of the assets, and Land will assume substantially all of the liabilities, of the PMC segment (the "Reorganization"); (ii) following the Reorganization, all of the issued and outstanding shares of Land common stock, held by an indirect subsidiary of Rexnord will be distributed in a series of distributions up to Rexnord and then to Rexnord's

- 2 -

stockholders (the "Distributions"), and the final distribution of Land common stock from Rexnord to Rexnord's stockholders will be made pro rata for no consideration (the "Spin-Off"); and (iii) immediately after the Spin-Off, Merger Sub will merge with and into Land, with Land surviving as a wholly-owned subsidiary of Regal (the "Merger"), and all shares of Land common stock will be converted into the right to receive shares of Regal common stock based on an exchange ratio specified in the Merger Agreement. When the Merger is completed, Land will be a wholly-owned subsidiary of Regal.  Upon closing of the merger, Regal shareholders will own 61.4% and Rexnord shareholders will own 38.6% of the combined entity ("New Regal").

3.     On July 21, 2021, Rexnord filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Rexnord stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the background of the Proposed Transaction; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Evercore Group L.L.C. ("Evercore"); and (iii) Evercore's potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Rexnord's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.     The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains office facilities located in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Rexnord.

- 4 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.      Defendant Rexnord is a Delaware corporation, with its principal executive offices located at 511 W. Freshwater Way, Milwaukee, Wisconsin 53204 and offices located at 1747 Commerce Way, Paso Robles, California 93446.  The Company is a growth-oriented, multi-platform industrial company with leading market shares and highly trusted brands that serve a diverse array of global end markets.  Rexnord's common stock trades on the New York Stock Exchange under the ticker symbol "RXN."

10.     Defendant Todd A. Adams ("Adams") has been President, Chief Executive Officer ("CEO") and a director of the Company since 2009 and Chair of the Board since 2020.

11.     Defendant Theodore D. Crandall ("Crandall") has been a director of the Company since 2015.

12.     Defendant Rosemary M. Schooler ("Schooler") has been a director of the Company since 2019.

13.     Defendant Robin A. Walker-Lee ("Walker-Lee") has been a director of the Company since 2015.

14.     Defendant Mark S. Bartlett ("Bartlett") has been Lead Director since 2020 and a director of the Company since 2012.

15.     Defendant Jacques Donavon Butler ("Butler") has been a director of the Company since 2021.

- 5 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

16.     Defendant David C. Longren ("Longren") has been a director of the Company since 2016.

17.     Defendant George C. Moore ("Moore") has been a director of the Company since 2015.

18.     Defendant Thomas D. Christopoul ("Christopoul") has been a director of the Company since 2013.

19.     Defendant John S. Stroup ("Stroup") has been a director of the Company since 2008.

20.     Defendant Peggy N. Troy ("Troy") has been a director of the Company since 2019.

21.     Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     Regal is a global leader in the engineering and manufacturing of electric motors and controls, power generation, and power transmission products, serving customers throughout the world.  Regal is comprised of four operating segments: Commercial Systems, Industrial Systems, Climate Solutions and Power Transmission Solutions.  Regal is headquartered in Beloit, Wisconsin and has manufacturing, sales, and service facilities worldwide.

23.     Land is a wholly-owned indirect subsidiary of Rexnord.

24.     Merger Sub is a wholly-owned subsidiary of Regal.

- 6 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.    Rexnord, and its consolidated subsidiaries, is a growth-oriented, multi-platform industrial company.  Rexnord's business segments consist of Process & Motion Control and Water Management.  The PMC segment designs, manufactures, markets and services a broad range of specified, highly-engineered mechanical components used within complex systems where Rexnord's customers' reliability requirements and costs of failure or downtime are high.  The PMC portfolio includes motion control products, shaft management products, aerospace components and related value-added services.  Rexnord's products and services are marketed and sold globally under widely recognized brand names, including Rexnord, Rex, Addax, Euroflex, Falk, FlatTop, Cambridge, Link-Belt, Omega, PSI, Shafer, Stearns, Highfield, Thomas, Centa and Tollok.  This segment had net revenues of $870.4 million in the nine-month transition period ended December 31, 2020 and $1,358.2 million in the fiscal year-ended March 31, 2020.

26.    The Water Management segment designs, procures, manufactures, and markets products that provide and enhance water quality, safety, flow control and conservation.  The Water Management product portfolio includes professional grade water control and safety, water distribution and drainage, finish plumbing, and site works products primarily for nonresidential buildings.  Rexnord's products are marketed and sold under widely recognized brand names, including Zurn, Wilkins,

- 7 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Green Turtle, World Dryer, StainlessDrains.com, JUST and Hadrian.  This segment had net revenues of $562.7 million in the nine-month transition period ended December 31, 2020 and $710.1 million in the fiscal year-ended March 31, 2020.

27.     On April 27, 2021, Rexnord announced its first quarter 2021 financial results.  Net income was $50 million, with diluted EPS of $0.40, compared with $29 million and diluted EPS of $0.23 in the prior year first quarter.  Reflecting on the Company's results and looking towards the future, defendant Adams stated:

> Our Water Management ("WM") platform delivered 12% total sales growth year over year in the quarter as the acquisitions of Just Manufacturing and Hadrian added 8% to WM first-quarter sales growth and core sales were up 4%.  The momentum in our order rates accelerated throughout the quarter and our core orders grew 10% year over year.  Our unrivaled portfolio of sustainable, smart and water saving solutions for public and private spaces continues to grow above market rates and our flexible business model positions us to continue to generate strong profitability amidst what is a more challenging price/cost environment.
>
> The compounding benefits of our longstanding strategic initiatives around simplification and structural cost reduction were visible in the solid incremental margins delivered by our PMC platform when compared with its robust year-ago financial results and given the mix effect from relatively weaker aerospace end markets.  Improving demand patterns

- 8 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

across most of PMC's end markets resulted in an increase in PMC's order backlog and a 1.10x book-to-bill ratio across PMC's non-aerospace end markets.

* * *

During the quarter, we also published our 2020 Sustainability Report, which reflected an expanded scope and the adoption of the SASB (Sustainability Accounting Standards Board) framework and reporting. The Sustainability Report highlights our extensive initiatives to support and protect our associates during the global pandemic, plus our ongoing efforts to reduce greenhouse gas emissions and water consumption intensity, our world-class workplace health and safety performance and our expansive support for the diverse communities where we live and work.

Given our expectations that the separation of our PMC and WM platforms will occur during the fourth quarter, we will continue to limit our external outlook to the upcoming quarter.  Based on the permanent cost reduction initiatives we have implemented, our order backlog heading into the second quarter, our preliminary view of April results and an anticipated range of demand patterns through June, we expect core sales in our WM platform to increase year over year by a high teens percentage and total reported sales to increase year over year by a high twenties percentage and

- 9 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

its Adjusted EBITDA margin to range between 26% and 27%. We further expect sales in our PMC platform to increase by a mid-to-high teens percentage rate and its Adjusted EBITDA margin to range between 23% and 24%, and for our corporate expenses to approximate $10 million.

**The Proposed Transaction**

28. On February 16, 2021, Rexnord and Regal issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

BELOIT WI, & MILWAUKEE, WI, February 16, 2021 – Regal Beloit Corporation (NYSE: RBC) and Rexnord Corporation (NYSE: RXN) today announced that they have reached a definitive agreement whereby Rexnord will separate its Process & Motion Control ("PMC") segment by way of a tax-free spin-off to Rexnord shareholders and then immediately combine it with Regal in a Reverse Morris Trust ("RMT") transaction. Regal shareholders will own 61.4% and Rexnord shareholders will own 38.6% of the combined entity ("New Regal"), before a potential dividend to Regal shareholders and a corresponding ownership adjustment to Rexnord shareholders, sized at closing to ensure that RMT ownership requirements are met. Rexnord shareholders will continue to own 100% of the businesses' Water Management platform.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

With the addition of PMC, Regal's 2020 pro forma revenue was approximately $4.1 billion with Adjusted EBITDA of $740 million, excluding $120 million in annualized cost synergies expected to be achieved by year three after closing. The pro forma 2020 EBITDA margin was approximately 18%.

The transaction combines Regal and PMC's best-in-class power transmission portfolios to drive innovation in industrial power transmission and motion control solutions through superior engineering, technology, and manufacturing capabilities. PMC is a world-class provider of specialized, highly-engineered power transmission components and solutions, with a strong portfolio of Industrial Internet of Things ("IIOT") solutions. The transaction expands Regal's portfolio, customer reach, and product diversity while creating shareholder value through enhanced growth and substantial cost synergies.

"This transformative combination brings together two highly complementary businesses, creating a premier provider of power transmission products, poised to deliver enhanced value for our customers, associates, and shareholders," said Regal CEO, Louis Pinkham. "Combining with PMC accelerates our transformation momentum and is an important step towards our vision to accelerate

- 11 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

profitable growth.  We believe this transaction will create meaningful value for customers by providing comprehensive solutions across the entire industrial drive train, increased portfolio and reach, and an enhanced presence in diverse and attractive end markets and geographies. Shareholders will benefit from compelling value creation and financial benefits, including enhanced growth, cost synergy-driven margin expansion, attractive ROIC, and earnings accretion."

"We have long admired PMC's products and capabilities, highly-regarded brands, and talented team.  Importantly, Regal and PMC are a terrific cultural fit with a shared commitment to integrity, customer success, continuous improvement, and a passion to win.  We are confident these shared values and complementary business structures will help facilitate a seamless transition and fuel our continued success."

Todd Adams, Chairman, President and CEO of Rexnord, commented, "This transaction provides clear and compelling value for Rexnord shareholders through ownership in a combined company with enhanced scale and significant growth opportunities.  Regal is committed to investing in the continued growth of its power transmission business, and we are confident the PMC platform and team are a perfect fit to accelerate their strategy.  Rexnord's Water Management business will be well-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

positioned to continue to drive differentiated growth as a standalone business aligned around its distinct competitive advantages and market dynamics."

***Key Strategic & Financial Benefits***

- Creates a premier player in industrial power transmission with complete product portfolio across the entire drive train. The combination with PMC fills gaps in Regal's PTS portfolio, creates a more compelling partner for distributors, and enables Regal to provide complete drive train solutions across all major applications for customers. In addition, the transaction represents an attractive value proposition for both customers and end users with enhanced service capability breadth, technology content and domain expertise.

- Improves end market diversity. Creates new avenues for growth through expanded focus outside of North America. Improves end market diversity, with increased exposure to attractive high-growth end markets including Renewable Energy, Food and Beverage, Automation, Aerospace, and eCommerce. Regal's combined portfolio is expected to be more balanced, with pro forma 2020 PTS

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

comprising nearly 50% of sales, reducing cyclicality and unlocking greater portfolio flexibility.

- Accelerates R&D and digital service capabilities.  Combined R&D fuels the growth of next-generation products and faster development of value-added features through enhanced innovation and reinvestment.  Provides opportunity to create world-class IIOT and digital experience with the Perceptiv™ and DiRXN® platforms, providing innovative new solutions for customers and end users.

- Substantial cost synergies of $120 million by year three, with $70 million realized in year one.  Expected synergies to be driven by procurement, distribution efficiencies, footprint rationalization, and SG&A savings.   Regal plans to continue robust investment in technology and innovation.

- Provides significant immediate and long-term value creation and financial benefits.  The transaction provides attractive ROIC and is expected to be accretive to cash EPS in year one after closing. In addition, assuming the mid-point of the expected adjustment mechanism range (described below), Regal shareholders would be expected to receive a dividend of ~$7 per share. The transaction is expected to leave Regal with a strong balance sheet.

- 14 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Unites aligned cultures with deep commitment to 80/20 and LEAN principles. Shared cultures focused on serving customers and driving efficiency. Talent infusion expected to accelerate 80/20, LEAN, IIOT, and new product development initiatives.

***Governance and Locations***

Upon closing, Regal will be led by its existing Board of Directors with the addition of two new directors from the Rexnord board of directors, mutually agreed upon by Regal and Rexnord. Rakesh Sachdev will continue as non Executive Chairman of the Board. Regal's CEO, Louis Pinkham, will lead the combined corporate entity, which will continue to be headquartered in Beloit, Wisconsin.

The combined PTS and PMC business will adopt the Rexnord name and be headquartered in Milwaukee, Wisconsin. Regal expects it will continue to maintain, invest in, and grow its presence in Florence, Kentucky, which will remain a strategic site.

Rexnord Chairman, President and CEO, Todd Adams, will continue to lead the Water Management business, which plans to remain headquartered in Milwaukee, Wisconsin.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

***Transaction Structure and Closing Conditions***

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, Regal shareholders will own 61.4% and Rexnord shareholders 38.6% in New Regal, before a potential dividend to Regal shareholders and a corresponding ownership adjustment for Rexnord shareholders.

The transaction is structured as an RMT and is expected to be tax-efficient to Regal and Rexnord shareholders for U.S. federal income tax purposes. Significant shareholder overlap between Regal and Rexnord shareholders, and the adjustment mechanism, will ensure that the RMT threshold of greater-than-50% ownership by Rexnord shareholders in New Regal, after factoring overlapping shareholders, is met in all circumstances.

Based on current information on the size and characteristics of overlapping ownership, there is an expected dividend to Regal shareholders, with a corresponding ownership adjustment for Rexnord shareholders. Based on current information, we expect the dividend to be in the range of $100 to $500 million with a mid-point of $300 million. That midpoint corresponds to ownership in New Regal of 60.0% for Regal shareholders and 40.0% for Rexnord shareholders post dividend.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The transaction values PMC at $3.69 billion, representing 14.2x 2020 Adjusted EBITDA, or 9.7x after factoring run rate cost synergies. The transaction is subject to regulatory approvals, Regal and Rexnord shareholder approvals, and customary closing conditions, and is expected to close in the fourth quarter of 2021.

***

*Advisors*

Barclays and Incentrum Group are serving as financial advisors to Regal, and Sidley Austin LLP is serving as legal counsel. Barclays is also providing Regal with committed financing for the transaction. Citi and Evercore are serving as financial advisors to Rexnord, and Morgan, Lewis & Bockius LLP is serving as legal counsel. Credit Suisse is providing Rexnord with committed financing for the transaction.

**The Proxy Statement Contains Material Misstatements or Omissions**

29.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Rexnord's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

30. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the background of the Proposed Transaction; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Evercore; and (iii) Evercore's potential conflicts of interest.

***Material Omissions Concerning the Background of the Proposed Transaction***

31. The Proxy Statement omits material information regarding the background process leading to the Proposed Transaction.

32. For example, the Proxy Statement fails to disclose whether the non-disclosure agreements the Company entered into with seven financial sponsors (Proxy Statement at 77) include "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any of these interested parties from submitting a topping bid for the Company.

33. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a non-disclosure agreement could make a superior proposal for the Company. If the potential acquirer's non-disclosure agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to

- 18 -

make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

34.   Any reasonable Rexnord stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

35.   The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Evercore's Financial Analyses***

36.   The Proxy Statement omits material information regarding Evercore's financial analyses.

37.   The Proxy Statement describes Evercore's fairness opinion and the various valuation analyses it performed in support of its opinion.   However, the description of Evercore's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.   Without this information, as described below, Evercore's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

38.   With respect to Evercore's *Discounted Cash Flow Analysis* of Regal, the Proxy Statement fails to disclose: (i) the terminal year estimate of the unlevered, after-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

tax free cash flows that Regal was forecasted to generate; (ii) the range of illustrative terminal values for Regal; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.75 to 9.75%; (iv) the estimated net present value as of December 31, 2020 of certain of Regal's other debt-like items for Regal's fiscal years 2021 through 2024; (v) Regal's estimated net debt, after-tax underfunded pension obligation and non-controlling interest as of December 31, 2020; and (vi) the number of fully diluted outstanding shares of Regal common stock on a pro forma basis giving effect to the separation and the distributions.

39.     With respect to Evercore's *Discounted Cash Flow Analysis* of Land, the Proxy Statement fails to disclose: (i) the terminal year estimate of the unlevered, after-tax free cash flows that Land was forecasted to generate; (ii) the range of illustrative terminal values for Land; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.0 to 10.0%; (iv) the estimated net present value as of December 31, 2020 of certain of Land's other debt-like items for Land's fiscal years 2021 through 2024; and (v) Lands's estimated net debt, after-tax underfunded pension obligation and non-controlling interest as of December 31, 2020.

40.     With respect to Evercore's *Pro Forma "Has-Gets" Analysis*, the Proxy Statement fails to disclose and quantify the net present value as of December 31, 2020 of the projected synergies (excluding any potential revenue synergies) based on the estimated cost savings (net of any costs to achieve the estimated cost savings).

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

41.     The omission of this material information renders the statements in the "Opinion of Evercore" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Evercore's Potential Conflicts of Interest**

42.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Evercore.

43.     The Proxy Statement sets forth that, "Rexnord also agreed to pay to Evercore, at the conclusion of the assignment, an additional discretionary fee in an amount not to exceed $3 million, in an amount determined by the Rexnord board of directors in its sole and absolute discretion." *Id.* at 143.  The Proxy Statement fails, however, to disclose the agreed parameters for such additional discretionary fee, the criteria Evercore needs to satisfy to receive the additional fee, and whether the Company anticipates paying Evercore the additional fee.

44.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

45.     The omission of this material information renders the statements in the "Opinion of Evercore" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Rexnord will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

47.     Plaintiff repeats all previous allegations as if set forth in full.

48.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the background of the Proposed Transaction, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

by Evercore, and Evercore's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

51.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

53.     Plaintiff repeats all previous allegations as if set forth in full.

54.     The Individual Defendants acted as controlling persons of Rexnord within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Rexnord, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence

- 23 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Proxy Statement.

57.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Rexnord's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Rexnord, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Rexnord stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 19, 2021                    **WEISSLAW LLP**
                                          Joel E. Elkins

                                          By: */s/ Joel E. Elkins*

                                          Joel E. Elkins
                                          9100 Wilshire Blvd. #725 E.
                                          Beverly Hills, CA 90210
                                          Telephone:  310/208-2800
                                          Facsimile:   310/209-2348
                                                  -and-
                                          Richard A. Acocelli
                                          1500 Broadway, 16th Floor
                                          New York, NY  10036
                                          Telephone: 212/682-3025
                                          Facsimile:  212/682-3010

                                          *Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS